May it please the Court, my name is Patrick Madden of K&L Gates. We represent Defendant Appellant PNC Bank in this matter. I'd like to reserve five minutes for rebuttal. The sole issue before the Court is whether the District Court erred when it concluded on summary judgment that plaintiff and other mortgage loan officers were not paid for rest and paid a biweekly fixed amount in relevant overtime, as well as any additional monthly bonus amounts they earned through their incentive plan. The District Court clearly erred. I'll briefly discuss why the outcome in this case is dictated by the California Supreme Court's 2020 decision in Oman v. Delta Airlines, and then discuss why the District Court's decision in Vaquero v. Stoneledge was erroneous. In Oman, the Supreme Court emphasized three key concepts. First, whether employees are properly paid for time worked requires a review of their compensation arrangements. Second, that the compensation may be calculated on a variety of bases, and California law does not dictate what pay formulas employers and employees may use. And third, that an employer that ensures a base level of pay for all hours worked cannot violate wage requirements by providing an opportunity for additional incentive pay. The Oman court that rejected the idea, relied on by numerous courts, including Menta and that wages can't be averaged over a period or over different activities. Instead, the Oman court approved of averaging, which was the first time the court had reviewed this line of cases for over a decade, and identified two key tests that could be applied to determine whether an incentive compensation complies with wage laws. The first is for each period covered by the compensation, is the employee paid at or above the minimum wage? And that can be done through averaging. Second, are there other tasks or periods not covered by the contract, but within the definition of hours worked, for which at least the minimum wage should have been paid? That contemplates off the clock, such as our Menta. In this case, the district court found that PNC satisfied the Oman test, explaining, and I quote, PNC always provided a base level of pay that included compensation for rest breaks, and the only deductions to incentive pay were consistent with the MLO's contracts. End of quote. The district court should have stopped its analysis there. Well, you know, when I read Oman and the other one, Vaccaro, what struck me was that Oman just seemed to be recognizing, seemed to be focused on minimum wage, making sure that the averaging covered minimum wage, and that it was okay, as long, the focus was on whether or not the employees were getting their minimum wage. That doesn't seem to be what's in play here. We're talking about rest breaks here, and whether or not they're compensated for their rest breaks under the incentive scheme, that's an issue. You're correct, Your Honor, that the issue here is whether they're compensated for rest breaks, not whether they took rest breaks. No, nobody's claiming that they didn't take them, I don't think, right? So the question is, and Vaccaro was based on our Menta, Gonzalez, Bluford, which were all minimum wage cases, and it was simply taking those minimum wage cases and applying it to a rest break, which by definition counts as hours worked. So let's just focus on, it would help me if you focused a little bit on the compensation scheme, the incentive plan here, and how that actually compensates, how they actually get their pay, which they have to get, for rest breaks. How does it ensure that they are being paid for their rest break? On a biweekly basis, they're provided a salary, and I know there's a dispute as to if it's a salary or if it's $16 an hour, but their offer letters in the plan says it's a salary, and they're provided a salary at $640 per week, $1,280 for a biweekly period. They're paid that $1,280 every biweekly period. They're paid overtime if they go beyond 40 hours, because under Section 515 of the Labor Code, they're required. Unlike federal law, where you can have a fixed salary for fluctuating work week, in California you can't have that. And so if you work in excess of 40 hours, they get overtime at time and a half or double time in addition to that $1,280. That money is theirs. In fact, the record indicates that over a quarter of the class never earned incentive compensation. They were only paid salary and overtime. And so that's how they're paid for the rest break. They're paid a salary, a fixed amount, not subject to return. It's not a debt. That's... But if they don't, what happens if they don't make their incentive? They still keep their money. They — and that's the example. Mr. Causey, who was the original plaintiff, was hired at one point and then left PNC Bank. But during that time, he never closed a loan. He was paid his salary. He kept his salary. And he didn't have to pay it back. Well, he had to be paid minimum wage. He had — well, he had to be paid minimum wage or in excess of minimum wage. He was paid a salary that paid him $1,280 every two weeks, which exceeded minimum wage, which satisfied the obligations of paying for the rest breaks as time worked. So what if he made an incentive over and above? If he made an incentive over and above, there was a — and I'll admit this was a complex incentive compensation plan, but there were positives and negatives. The positives included his own sales, team sales, that's potential supervisory overrides, additional fixed amounts, and those were added up. A manager could adjust the amount or disclaim it altogether if he had performance issues. And then you also had various offsets from that where you calculated in negatives, and one of those negatives was the salary that was paid, because the idea was to pay them a bonus above what they'd paid before. And so it was built into that calculation. And Judge Spiro, his argument is if you accept that this is a salary and not a draw, which there's nothing in the record that suggests it was a draw, at least a post-2017 record site that suggests it was a draw, Judge Spiro's comment was then it would violate Section 221 that says you can't have deductions from wages. And the issue there is really an issue addressed by the Ralph's Grocery case and the various cases that have gone on since then, including Tessitore, which came down from the Court of Appeals post-Oman. And the key there is what is a wage, what is a deduction, and is including something in a calculation prior to calculating a bonus improper? And if you look at Ralph's Grocery, Tessitore, they suggest that it isn't. And in fact, another case cited in a footnote, the J.B. Hunt case, Williams v. J.B. Hunt from March 2022, looking at Oman and at Ralph's Grocery, looks at the exact same circumstance and reaches the conclusion that what you have is you have a, in that case involved, a base salary, but a base hourly amount that was paid every pay period. It included an incentive piece rate plan that resulted in a bonus. And it went through the analysis and said this is acceptable, it pays for rest breaks because there's a base amount that is always going to be paid, isn't subject to repayment or return. And if someone leaves and never makes any incentive, their rest breaks have been paid. And if you go to the second stage of it, the adjustments for that base pay were taken out of the calculation of the bonus, but it was done pre, in the calculation process, not in the post deduction from the wage calculation. Let me ask you two questions. One, in regular pay, is the time for rest breaks included in regular pay? Yes, Your Honor. Okay. And, but the, let me ask you this, they're not hired, their offer of compensation is just not regular pay. Well, I mean, their, their, their compensation scheme is really an incentive plan, correct? No, Your Honor, it isn't exclusively an incentive plan. Their offer letters, which are in the record. Does their offer letter say, your, your compensation is X dollars an hour, period? No. Their compensation, their offer letter states, you will be paid a salary of $33,280 per year on a biweekly basis, plus overtime. You also have the opportunity to obtain additional incentive pay under the PNC incentive plan. That's what the offer letter states, and, and those are in the record, both for Ms. Scheid and Mr. Causey. The plan, the top of the plan says that there's regular pay, it has a summary at the start of what your pay looks like, there is regular pay, and then there is an opportunity to earn additional incentive pay. And so, and, and the question is, can you ignore that evidence, both in the offer letter and in the plan, that says, when Oman says you look at the understanding of the parties, that says that this is regular pay, is the threshold amount that's paid? And, and, and the evidence, there are declarations from six class members who testified they understood they were paid salary and overtime for all hours worked, and they had the opportunity to earn incentive pay, they may or may not earn it, but they understood they had a constant flow of payment through their salary. And, and Judge, Judge Spiro in footnote 11 kind of discards that and says, well, I recognize those facts, but I'm going to view this as an issue of law, and I don't find that they're dispositive. Let me ask you, I'll give you some time for rebuttal, because, and I'm sorry for asking so many questions, but let me ask you this. So, so if, if an employee does make, to the incentive level, deduct the regular pay, correct? Yeah. Well, Your Honor, the regular pay isn't included in the calculation of incentive pay. The word deduct or deduction is a legally bound word, and Rouse Grocery says it's not a deduction because it's prior to the calculation of what is earned, and it draws a distinction. And that's the same thing that Tessitore says, is it's not a deduction. A deduction is from an earned amount. Including it in the calculation is not a deduction. Instead, you would only have a deduction such as incurs when it was calculated, earned,  And so I wouldn't agree that it's a deduction in this circumstance. It's part of a calculation. What is it, then? Just part of it? Just a number? It's just a number. It's part of a calculation to determine what the incentive compensation is. Let's hear it from the other side, and I'll give you some time for rebuttal. Thank you, Your Honor. Thank you. May it please the Court, Robert Soloff on behalf of Plaintiff Linda Scheid and the certified class of mortgage loan officers employed by the PNC Bank. This case has been brought pursuant to 29 U.S.C. 1292B, asserting the defendant, PNC Bank appellant, has asserted that there were two issues. The first issue has been decided, whether California Labor Code 203 could operate as a derivative claim to a rest break claim, and that's been decided by Nerano. That leaves us with the second issue, which the Court has heard argument on today, whether PNC's compensation plan or arrangement complies with California law. As I'll go through in a moment, PNC essentially is challenging the application of the facts to the law. They're really not asserting the law. OMON, as this Court correctly stated, addresses minimum wage. It does not address rest breaks. It does not address deductions or subtractions of wages paid. And thus, this Court, based on the remaining question and the argument brought by PNC, pursuant to a recent decision by this Court in ICTSI v. International Longshoremen, where, again, this Court had an appeal under 1292B and found that the argument brought there, similar to the argument brought here, is applying the facts to the law, and, therefore, jurisdiction was implied. There's no dispute here over the facts. There certainly is, and you just went through a good deal of those disputed facts. Well, there's no dispute over how this – what this compensation scheme is. We know what the scheme is. We know exactly what the scheme is, and we know what the numbers are. Right. We do have, however, a nomenclature issue, as I would put it. Well, that's – nomenclature is a little bit different as whether or not there's a tribal issue of fact. I guess we could have a tribal issue over what is nomenclature, what's the nomenclature that applies here. But that is – Maybe that's a factual dispute, but that's not the core facts that are in play here. You know, I would just appreciate it if you'd go right to the merits of this. I don't think you want to spend too much time on jurisdiction. PNC's compensation plan provides payment of a salary which works out to $16 an hour. It's undisputed that the mortgage loan officers are non-exempt employees entitled to overtime. They're paid on a biweekly basis. They also have mortgage products or loans which they can sell. They receive commissions on the sale of those mortgage products based on the quantity and the type of specific loan. That is also undisputed. PNC's compensation plan for years used the term commissions. They acknowledged that the incentive plan provided commissions. And then PNC modified its compensation plan and no longer used the term commissions, but rather replaced that term with incentives. Otherwise, their compensation plan, and specifically Addendum A, which is a short, brief explanation, addressed it that way. The key, and the Court has already zeroed into it, is what's the interplay between so-called regular pay, the salary which reflects $16 an hour, and the commissions or incentives which are subsequently earned? And on a monthly basis, PNC issues a commission's earnings statement. And we have an example of one in our brief. And what they do is they calculate mathematical formula, predominantly based, as the district court found, predominantly based on the amount and type of loans that are issued. They calculate that amount, and they deduct, subtract from that amount all of the regular pay, as long as the commissions exceed the regular pay. What happens when the commissions do not exceed the regular pay, I think the Court asked. And I'll address that. So now they received this biweekly pay, two amounts, and they only earn or they don't earn any, they don't make any sales, or they only make $1,000 sales. PNC then, nonetheless, does its mathematical calculation, deducts the regular pay, resulting in a deficit amount. So that individual mortgage loan officer now has a, quote, deficit. That deficit continues on to the next month's computation. Now, they do great in the next month, so now they receive incentive compensation. And it goes on. So they may, and then they may have three bad months, and they may have a $6,000 deficit. And only if they exceed that deficit do they receive any incentive compensation, a.k.a. commissions. Now, this case is virtually identical to the Vaccaro case. And in Vaccaro, there were salespeople, they received $12.01 per hour for up to 40 hours worked in a week. And they were commissioned salespeople. If their commissions exceeded the hourly rate, they received that amount of money. If their commissions were less than their hourly wages, then, again, it was deducted and they ran a deficit, which continued into the future. And Vaccaro was an intermediate appellate decision in California, review denied by the California Supreme Court. And the court there found that the payment of the hourly rate was illusory in the sense in that it was deducted against the commissions earned. Thus, the only net received earnings by the salesperson in Vaccaro was based upon their commissions. And because you can only obtain commissions while performing work, there was no actual payment of the rest period. And let's go back. And that's because rest period has to be work-free. So there are two conditions. Yes, Your Honor. There are two conditions. California Code 226.7 requires and mandates that rest periods be provided of at least 10 minutes per four-hour period. No issue that PNC provided those rest periods. The issue is whether there was compensation for those rest periods. Though, in addition to providing those rest periods, that is considered to be hours worked. And Part 2 of 226.7, there may be no deduction from wages for those rest periods. And that is essentially this case. There is purported regular pay, and it's calculated on a call to salary, but it doesn't matter. It's hourly. And by the way, Oman says you can take any of these systems, commission, piece rate, Vaccaro, combination hourly and commission, and you can convert it to regular pay if you're looking to see about minimum wage. That regular pay is deducted. And just as in Vaccaro, a deficit is run. And just as in Vaccaro, if at the end of the employee's employment they owe some money, technically, the employer in Vaccaro as well as in PNC does not require repayment. That does not change, one, the character of that regular pay, which is and was specifically prior to other litigation where they changed the, again, nomenclature. That was represented as a draw against commissions. And subsequently, they removed the term draw, and they nonetheless recapture it. Judge Spiro found specifically, and this is the finding of fact I think that is to some extent at issue, he specifically found that PNC did subtract or deduct the regular pay. Now, you just heard counsel stand up here and say there was no deduction. It was just a number that's figured in the scheme. Yes. That is exactly what he said, and I'm going to address that. Judge Spiro stated that this was, and again, this is on record, page 22, quote, the incentive compensation at the heart of this case was tied to loan sales and a manager resembling, if not constituting, commissions. The calculation of that incentive pay was derived in large part on the percentage of their loan sales as well as other factors, quote, but subtracted the MLO's regular pay plus any deficit carried over from previous months before reaching a total. Thus, the Court found that there was a subtraction. And so the question or deduction, it was set off. It was recaptured. Whatever term you want, the Court has found that. What PNC argues is that the incentive pay was a bonus. It was extra. PNC says, oh, we paid regular pay plus we have a bonus or incentive pay that was also provided. It's extra and above. That concept has been repeatedly and routinely rejected by the courts of California. Specifically, there was a compensation plan in the case of Quillian where versus Lion Oil where there was a payment and then there were there was a certain commission. And basically, Quillian claimed that or rather Lion Oil claimed that that was a bonus and that, therefore, there was they were allowed to do any computation that they wanted regarding the pay or wages that had been provided. And that was rejected by the Court there. And to direct your attention to Quillian, I believe it's page 163. So the company, quote, describes the subject bonus as a calculated amount consisting of computed Again, just as exactly. Let me just ask you one, maybe two questions. I don't know. So if the employee only makes regular pay, does it meet the incentive minimum, the amount for incentive? Just for some reason only makes, is that an option? Is that part of the employee's one way in which the employee can be paid? I understand the question, Your Honor. Not really. Essentially, what happens is if an employee makes, again, they make regular pay for a couple of months, and they don't make enough incentives to get a net incentive pay, that deficit, that regular pay for those three months, less whatever commissions they earn, carries over and continues. So imagine someone does not make sufficient commissions to offset the regular pay deduction. They have a negative amount. That negative carries forward. But now, they do great. They do fantastic in the month of November, and they close, you know, $20,000 worth of loans. Then that regular pay, which has been accrued as a deficit, is deducted. And thus, the regular pay that they received in May now has been taken back away from them. And that's essentially the key to the case. So when I was asking counsel to describe the nature of the compensation plan, it's really an incentive plan. It's a commissions plan. Or commission. Well, he's called it incentives. Right. It's a commissions plan under California law. If it's basically a sale and it's based on an amount or type, then it represents a commission. And by the way, I'm sorry. Under California law, however, the employee always has to be paid minimum wage, no matter what the scheme is. Employee must be paid minimum wage, and that payment must be free and clear. It must accrue totally to the employee and not be subject to deductions, which is the quillen and the hudges. Now, in this particular scheme, if the regular pay was not treated as a deduction or whatever or just a factor in the overall scheme, if it was just regular pay and nothing else, the employee had one option of selecting this route of compensation. The employee, would the employee be paid for breaks in that scenario? No, the employee is not paid for breaks because it's deducted. No, but forget that. Let's assume a compensation scheme where the employee could say, yeah, I'm just going to work 40 hours a week. I'll take hourly rate, $16 an hour. That's it. I don't want to have to worry about working too hard to get incentives. Would the employee be getting paid for rest breaks in that scenario? Yes, that's free and clear. So, for example, let's use the comparison. But the problem here is when they incorporate it into this incentive plan and they start applying it to the end compensation, I guess. Yes, precisely, Your Honor. The problem is that the regular pay is not free and clear. It's not paid as a wage. I see. It's deducted from the incentive or commissions which are paid. Can I ask if, is there, this is a simplistic question, but is there an accounting entry that says rest break pay? No. If there was, but it was the same $16 an hour, would you have the same issue that you are arguing here? Yes. Essentially, any commission-based pay program, pay plan, which solely pays for a commission such as Viqueiro, such as here, must provide separate pay for the rest break. So we can either do that with a base hourly wage for which it is not deducted or we can do it simply paying rest break separately plus the commissions. So your case is really like Viqueiro? It's precisely. Okay. Thank you, counsel. Thank you. Judge Gould, did you have any questions? Judge Gould? No questions. Okay. Thank you. Thank the Court. Let's put two minutes on the clock. Thank you, Your Honor. I'd start off by noting a couple of things. First is that this decision was made on summary judgment, assuming undisputed facts. It's somewhat ironic that plaintiff's counsel suggests that there are disputed facts. One of the things he told the Court was that there was always a deduction, simply not supported by the record. In fact, the first six months that someone came into work, there wasn't a carryover of this amount in the deductions. It also didn't apply during the winter months. Instead, those were kind of absolved from this process, and they were paid a salary. But if somebody came in and was paid the salary and decided they just wanted their salary, and this is what Ms. Scheid did the last year of her work, was she didn't produce any loans. She just took her pay. That was money they were entitled to, and that's what's in the record in terms of the evidence, is it was a salary. It was not subject to deduction. It was something they could keep. And Ms. Scheid left with a plan deficit of over $33,000 but owed nothing. She testified she didn't anticipate to pay for it. She understood she didn't have to. Now, Quillian is interesting because Quillian was a trial and was an appeal after all the facts came in, and the judge ruled as a matter of fact that he found that the plan was deceptive in an attempt to evade. It wasn't something decided on summary judgment. Instead, he looked at the overall scheme of things and said, I'm concluding that this was something intended to evade the law, even though it was different, and it did have a base pay. Your Honor, what I'd like you to do is really look at Oman and counsel argued this was minimum wage. That was his core argument was they were not paid minimum wage for these rest breaks. And Oman noted that employers or employees are free to determine how to structure their pay. And Judge Spiro recognized that the pay in this case was distinct from in Vaquero and Iberra. Vaquero labeled this a deduction and labeled it as a draw. It did not identify it as a base pay that wasn't subject to reduction. And that's a key distinction. And then the second issue with Oman is you have to apply and look at Vaquero through the Oman guise, which is a two-part test, which really asks whether or not there was an improper reduction in violation of the requirements of minimum wage. Your Honors, we ask you to please follow Oman, apply it, reverse the district court and enter judgment in favor of PNC Bank in this matter. Okay. Thank you, counsel. We appreciate your arguments this morning. They're very helpful. And with that, we'll be adjourned for the morning. I'll rise.
judges: GOULD, PAEZ, Molloy